UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

MICHAEL J. TOMPKINS,

        Debtor.

_____/

Case No. DT 06-05983
Hon. Scott W. Dales
Chapter 7

JAMES W. BOYD, Chapter 7 Trustee,

        Plaintiff,

v.

JAMES A. PETRIE, Trustee of the JAMES A.
PETRIE TRUST,

        Defendant.

_____/

Adversary Pro. No. 07-80373

**SUPPLEMENTAL OPINION**

This matter is before the court after a bench trial on the complaint of Chapter 7 Trustee James W. Boyd ("Trustee") against Defendant James A. Petrie as trustee of the James A. Petrie Trust ("Defendant"). On the morning of trial, the parties stipulated to the dismissal with prejudice of the Trustee's fraudulent conveyance counts under 11 U.S.C. § 544 and the Uniform Fraudulent Transfer Act ("UFTA"), and the Bankruptcy Code's fraudulent conveyance statute, 11 U.S.C. § 548. Accordingly, the only issue to be tried was whether the transfer by quit claim deed of certain real estate commonly known as 10044 Lord Road, East Jordan, Michigan to the James A. Petrie Trust was

avoidable as preference under 11 U.S.C. § 547(b), and assuming avoidance, recoverable under 11 U.S.C. § 550.[1]

At the conclusion of the proofs, the court announced its intention to rule for the Defendant, finding that on the date of the Transfer (June 28, 2006), the Defendant possessed no separate interest in property because, at that time, the Debtor had only the interest of a tenant by the entireties.[2] In so ruling, the court intended to express, but fell short of expressing, its conclusion that the Trustee failed to establish diminution of the estate, a somewhat distinct, extra-statutory element of any preference claim. See Chase Manhattan Mortgage Corp. v Shapiro (In re Lee), 530 F.3d 458 (6th Cir. 2008) (acknowledging diminution of the estate doctrine). This Supplemental Opinion explains the court's conclusion that the Trustee failed to establish by a preponderance of the evidence that the Transfer diminished the estate.

As the court observed in its bench ruling, the United States Supreme Court in United States v. Craft described the tenancy by the entirety estate under Michigan Law as follows:

> Following Blackstone, Michigan characterizes its tenancy by the entirety as creating no individual rights whatsoever: "It is well settled under the law of this State that one tenant by the entirety has no interest separable from that of the other .... Each is vested with an entire title."

---

[1] In this opinion, the court will refer to the real estate as the "Lord Road Property" and to the James A. Petrie Trust as the "Trust." The court will refer to the transfer of the Debtor's interest in the Lord Road Property as the "Transfer" and the date the Transfer occurred under 11 U.S.C. § 547(e)(1) as the "Transfer Date."

[2] This Supplemental Opinion and the bench ruling constitute the court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52.

United States v. Craft, 535 U.S. 274, 281-82 (2002) citing (Long v. Earle, 277 Mich. 505, 517, 269 N.W. 577, 581 (1936)).   The court concluded, based on the entireties nature of the property on the Transfer Date, that the Transfer did not result in a meaningful diminution of the estate.   Implicit in this decision, of course, is the notion that the Trustee must prove diminution of the estate in addition to the other elements enumerated in 11 U.S.C. § 547(b).   See In re Lee, 530 F.3d at 464.   The Sixth Circuit in In re Lee explained that "[a]lthough § 547(b) does not expressly make diminution of the estate an element of a preference claim, diminution is understood to be a requirement as a result of § 547(b)(5)'s improvement-in-position test . . . ." Id.   The improvement-in-position test requires the court to predict how the preference defendant's claim would be treated in a hypothetical Chapter 7 proceeding on the actual petition date, assuming the transfer had not occurred.   Neuger v. United States (In re Tenna Corp.), 801 F.2d 819 (6th Cir. 1986).

The Trustee's argument that he may avoid the Transfer even though the Debtor held no meaningful individual interest in the property on the Transfer Date implicitly assumes that the Debtor's inevitable divorce would have transformed the Lord Road Property into a tenancy in common, making it available for distribution to creditors other than the Defendant and his wife.[3]   That assumption, however, is premised on the further

---

[3] Ironically, if the Debtor and his wife had transferred the property to a third party who was not a creditor, the transfer would have likely been immune from the Trustee's attack either as a preference (since not a transfer to a creditor), or as fraudulent conveyance (since entireties property is not included within the definition of "asset" under the UFTA).   Indeed, the transfer of such property would probably not constitute diminution within the meaning of 11 U.S.C. § 548, as interpreted in this District. Moyer v Nino, No. 1:08-CV-721, Slip Copy, 2009 WL 416295 (W.D. Mich. Feb. 18, 2009) (entireties property not an "asset" under UFTA); cf. Richardson v. Huntington Nat'l Bank (In re Cyberco Holdings, Inc.), 382 B.R. 118 (Bankr. W.D. Mich. 2008) (debtor does not have an interest in fully secured asset within the meaning of Section 548(a)(1).   Indeed, Judge Hughes's suggestion in Cyberco that Section 548 includes the same diminution of the estate limitation as the UFTA is based on the phrase "an interest of the debtor in property" in 11 U.S.C. § 548(a)(1).   Section 547(b) employs the exact same phrase, and the court is

3

assumption that the divorce would have occurred before the Debtor filed his bankruptcy petition, even if the Transfer to the Defendant had not.

The Trustee's assumption that the divorce would have occurred prepetition even if the spouses had not resolved their debt and property issues to the Defendant's satisfaction is not supported by facts adduced at trial.   Indeed, from the trial testimony of the Defendant, his daughter, and his wife, it is clear that family members understood that the Defendant's cancellation of the Debtor's debt and the corresponding Transfer were designed to "facilitate" the divorce.  It is natural to infer that the existence of such a large marital debt, and the disposition of the spouses' main asset – the marital home – played a key role in facilitating the divorce through negotiation.  The Consent Judgment of Divorce itself contemplates that the Transfer of the Lord Road Property and the divorce would be contemporaneous, thereby confirming the central role that the Transfer and the marital home played in the divorce proceedings, including the timing of the divorce.  The spouses, and presumably the Defendant *as grandfather*, intended to provide a home for the children, and in fact the Defendant's daughter and her children continue to reside at the Lord Road Property.  Accordingly, the court is unwilling to assume (as the Trustee does in advancing his argument under 11 U.S.C. § 547(b)(5)), that the divorce would have occurred prepetition without the Defendant's cooperation, and therefore, that the Debtor would have had an interest as tenant in common in the Lord Road Property on the petition date.  In the court's experience, it is not uncommon for one spouse to file a bankruptcy petition during the pendency of divorce proceedings,

---

inclined to construe similar phrases in a similar fashion, recognizing, of course, the special attributes of entireties property and various contingencies associated with realizing value from such property in bankruptcy. See Lasich v. Wickstrom (In re Wickstrom), 113 B.R. 339 (Bankr. W.D. Mich. 1990).

4

while the marital home remains held as a tenancy by the entireties.  The evidence does not support the assumption that the divorce would have taken place when it did without the Defendant's cooperation, which was purchased in part with the agreement to transfer the Lord Road Property.  It bears repeating that entireties property in Michigan does not lose its character as such during separation or pendency of divorce proceedings, but only after the marital unity is formally destroyed.  Estes v. Titus, 481 Mich. 573 (2008).

In reaching this decision, as the court observed on the record, the court relied in part on Judge Bell's recent opinion in Moyer v. Nino, which reaffirms the vitality of the "no harm no foul" rule in our District.  Moyer v. Nino, No. 1:08-CV-721, Slip Copy, 2009 WL 416295 (W.D. Mich. Feb. 18, 2009).  Although Judge Bell acknowledged that circumstances in a preference case may permit an exception to the rule, the Nino opinion, and its citation to Estes v. Titus, 481 Mich. 573 (2008), serve as a reminder that courts must consider the "no harm no foul" rule and its corollary, the "diminution of the estate doctrine," in avoidance actions.

As the Sixth Circuit noted, the diminution of the estate doctrine derives from the hypothetical chapter 7 test in 11 U.S.C. § 547(b)(5), and requires the Trustee to prove through competent evidence, that the Defendant fared better as a result of the Transfer than he would have in Chapter 7 had the Transfer not occurred. The Trustee gets no presumption in this regard under the statute.  On this point, however, the Trustee offered no evidence.  Although it is tempting to assume, based upon the Trustee's trial brief and closing argument, that the Defendant fared better as a result of the Transfer, there were no facts in the record to compel the inference, and the conclusion is by no

5

means inevitable. <u>Wilson v. Kuwahara Co., Ltd.</u>, 717 F. Supp. 525, 530 (W.D. Mich. 1989) ("statements made in briefs are not evidence"). Even assuming the Debtor's schedules (to the extent in the record) suggest the Defendant would have received less than the 98% distribution he reportedly enjoyed on account of the Transfer, it is conceivable that other preference or fraudulent conveyance recoveries might have augmented the distribution to other creditors not favored by the Debtor's prepetition Transfer. It is also possible that some claims on the court's register would be subject to objection. Moreover, it is conceivable that the Defendant and his wife were the Debtor's only joint creditors, and therefore the only creditors who could have reached the Debtor's interest in the Lord Road Property if the divorce had not occurred prepetition. If so, it is conceivable that the Defendant would have received comparable treatment under a hypothetical Chapter 7 than he in fact received as a result of the Transfer. <u>See</u> <u>In re Spears</u>, 313 B.R. 212, 219 (W.D. Mich. 2004) (*joint* creditors in bankruptcy can reach entireties property); <u>Michigan Nat'l Bank v. Chrystler (In re Trickett)</u>, 14 B.R. 85, 90 (Bankr. W.D. Mich. 1981) ("this court will exercise its jurisdiction over the entireties property and administer the entireties property for the equal benefit of all *joint* creditors"); <u>contra</u> <u>In re Raynard</u>, 327 B.R. 623 (Bankr. W.D. Mich. 2005) (suggesting that entireties property, to extent of joint claims, should be distributed to all creditors, not just joint creditors).

The court should not be left to guess about or assume any element of a plaintiff's case, even one that might have been easily satisfied by testimony from the Debtor or his wife concerning the effect of the Defendant's claims on the timing of the divorce or

the filing of the petition, or testimony from the Trustee himself, concerning the likely distribution to unsecured creditors.

Accordingly, the court finds that the Trustee has failed to establish diminution or, stated differently, failed to establish a key element of his case under 11 U.S.C. § 547(b)(5).   The court does not mean to imply that a transfer of entireties property can never support a preference claim, but only that the Trustee failed to prove his case with the facts established in this trial. See Lasich v. Wickstrom (In re Wickstrom), 113 B.R. 339 (Bankr. W.D. Mich. 1990).

The court will enter a separate judgment.

Date: March 26, 2009

Scott W. Dales
United States Bankruptcy Judge