UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

MICHAEL J. TOMPKINS,                                    Case No. DT 06-05983
                                                        Chapter 7
                Debtor.                                 Hon. Scott W. Dales
_____/


JAMES W. BOYD,                                          Adversary Proceeding
                                                        No. 07-80373

                Plaintiff,

v.

JAMES A. PETRIE, Trustee of the JAMES A.
PETRIE TRUST,

                Defendant.
_____/


**<u>OPINION REGARDING RULE 52 MOTION</u>**


        This adversary proceeding involves Plaintiff Chapter 7 Trustee James W.

Boyd's preference claim against Defendant James A. Petrie, as trustee of the

James A. Petrie Trust.  At the conclusion of proofs, the court rendered a bench

ruling that, upon reflection, required further explanation and revision.

Accordingly, the court issued a supplemental written opinion. <u>See</u> Supplemental

Opinion dated March 26, 2009 (DN 48).  The court then entered a separate

judgment consistent with the Supplemental Opinion. <u>See</u> Judgment in an

Adversary Proceeding (DN 49).  Within ten days after the court entered

judgment, the Plaintiff Trustee ("Trustee") moved to amend the court's findings of fact and conclusions of law, relying principally on Fed. R. Civ. 52 (the "Motion").

The Trustee's Motion seeks relief in the form of amendment on two principal points. First, the Trustee seeks an order clarifying that the transfer of entireties property may support avoidance under 11 U.S.C. § 547, under Lasich v. Wickstrom (In re Wickstrom), 113 B.R. 339 (Bankr. W.D. Mich. 1990). Second, the Trustee seems to be asking the court to take judicial notice of the claims register and accept the Debtor's Schedules (Exh. 7) as sufficient evidence to meet the Trustee's burden of proving that the Defendant received more on account of the transfer than he would have received in a proceeding under Chapter 7, had the transfer not occurred. The court has carefully considered the Trustee's arguments in support of the Motion and finds they do not warrant relief.

The Trustee's Motion also relies -- as the court relied in its Supplemental Opinion -- on the Sixth Circuit's decision in Tenna Corp., infra. That opinion, of course, requires the court to perform the hypothetical Chapter 7 liquidation test as of the petition date. The Trustee argues that, under Tenna Corp., the court's inquiry regarding the hypothetical Chapter 7 liquidation, save for customary administrative claims, must begin and end with the schedules because to admit other considerations would invite Trustee manipulation. This reading of Tenna Corp., however, does not withstand scrutiny. See Shapiro v. Art Leather, Inc. (In re Connolly North America, LLC), 398 B.R. 564 (Bankr. E.D. Mich. 2008) (requiring evidence beyond the schedules after explaining effect of Tenna Corp. decision). The Sixth Circuit does not require the court to blindly accept

schedules as filed, nor does the court read the opinion as making the actual universe and nature of claims irrelevant. The Sixth Circuit in Tenna Corp. selected the petition date (rather than the transfer date or the date of the adversary proceeding trial) as the date at which courts must hypothesize the liquidation under § 547(b)(5), but the decision does not require courts invariably to ignore usual and customary developments in a case. For example, the Sixth Circuit recognized that courts must consider ordinary administrative claims (assuming there is evidence of such claims). Compare Tenna Corp., 810 F.2d at 823 with Art Leather, Inc., 398 B.R. at 581 (acknowledging discussion of administrative claims in Tenna Corp. but finding no such claims for purposes of the § 547(b)(5) analysis because "the Trustee presented no evidence about any previously allowed but unpaid administrative expenses, or about projected future allowable administrative expenses").  Nor, for that matter, will the court assume the Sixth Circuit expects bankruptcy courts to ignore other customary events and aspects of a Chapter 7 liquidation, particularly when the statute expressly directs the court to consider the extent to which the preference Defendant would have received payment under the "provisions of this title," namely title 11, United States Code.  Rather, the Sixth Circuit in Tenna Corp. was concerned that including extraordinary *post-petition chapter 11 debts* in the §547(b)(5) calculation (including super-priority claims) was unfair, unwise, and unnecessary to ensure equality of distribution.  The Trustee reads too much into Tenna Corp.

The court acknowledged the Trustee's first point that Wickstrom, supra, remains good law by observing in the Supplemental Opinion that transfers of

entireties property may support a preference recovery, notwithstanding the "no harm, no foul" rule that Judge Bell recently amplified. See Moyer v. Nino, No. 1:08-CV-721, Slip Copy, 2009 WL 416295 (W.D. Mich. Feb. 18, 2009) (citing Estes v. Titus, 481 Mich. 573 (2008)); see also Lasich v. Wickstrom (In re Wickstrom), 113 B.R. 339 (Bankr. W.D. Mich. 1990).   The court reads Nino as encouraging closer scrutiny of transfers involving entireties property when the Trustee invokes avoidance or similar powers, given the historical protection such property receives as a matter of state law and the continuing vitality of the "no harm, no foul" principle. Wickstrom nevertheless remains as persuasive authority.

On the Trustee's second point, regarding the effect of the schedules and the judicial notice of the claims register, the court continues to believe that the Trustee offered no competent evidence on the hypothetical liquidation element.[1] With respect to Exhibit 7 (the schedules), admitting them does not make their contents invariably reliable or persuasive. See Fed. R. Evid. 801; cf. Shapiro v. Art Leather, Inc. (In re Connolly North America, LLC), 398 B.R. 564 (Bankr. E.D. Mich. 2008).   Schedules are sometimes incomplete and inaccurate, and the Trustee's counsel elicited no testimony from either the Debtor (who appeared at trial) or the Trustee (who did not) regarding the statements contained therein. The Debtor in this case evidently ran a sporting goods business, with inventory, equipment, and presumably intangible property.   The court was not persuaded

---

[1] The court's statement in the Supplemental Opinion that the trustee offered "no evidence" followed the statement made earlier in the paragraph that the Trustee was required to prove his case by offering "competent evidence" without the benefit of any presumption.  For the sake of clarity, the court notes that the Trustee did not offer competent evidence on the final element of his case.

that the hearsay statements contained in the schedules, without more, were competent evidence of the universe of assets, asset values, allowable claims, or for that matter, existence of joint debt.

The Trustee's request that the court take judicial notice of the claims register,[2] evidently to supplement statements contained in his trial memorandum and the Debtor's schedules, does not change the court's ultimate conclusion regarding the Trustee's failure to meet his burden of proof. Although the court may take judicial notice of its own records, including the claims register, at any stage of the proceedings, taking judicial notice of those records after proofs have closed raises a number of difficult issues of fairness and surprise,[3] but more fundamentally does not establish the register's contents as proven facts. Passa v. City of Columbus, 123 Fed. Appx. 694, 697 (6th Cir. 2005) (courts may take judicial notice of at least some documents of public record but only for the fact of the documents' existence, and not for the truth of the matters asserted therein); Davis v. Caruso, Civ. No. 07-CV-11740-DT, slip op., 2009 WL 877964 at *6 (E.D. Mich. March 9, 2009). Taking judicial notice establishes only the incontrovertible fact that the creditors filed claims. Without testimony from the Trustee or other knowledgeable witness regarding the claims, however, the court had insufficient evidence to find the Defendant, a joint creditor, fared better as a result of the

---

[2] The brief originally filed in support of the Motion invokes Fed. R. Evid. 201, but the Trustee's post-argument brief appears to back away from that request, evidently based on the Trustee's over-reading of the Tenna Corp. case.  See Plaintiff's Supplemental Post-Hearing Reply Memorandum in Support of Motion for Amendment of, or Additional, Findings and Conclusions and Amendment of Judgment Pursuant to Fed. R. Bankr. P. 7052, Or In the Alternative, To Alter, Amend, or Grant Relief From Final Judgment Pursuant to Fed R. Bankr. P. 9023 and/or 9024 (DN 60), at p. 7, n. 4 ("The claims register is, however, unnecessary and irrelevant, and probably inadmissible under Tenna").

[3] Art Leather, Inc., 398 B.R. at 581.

Page 6 of 8

transfer than he would have in a hypothetical Chapter 7 proceeding. In our district, Chapter 7 Trustees commonly include claim objections as part of their final reports, so without testimony, the Trustee's case relied on an inference that the court was not willing to draw, namely that every claim on the Debtor's schedules would be honored. Art Leather, Inc., 398 B.R. at 581 ("the Court cannot simply assume that all unsecured claims that were filed in the CNA bankruptcy case but not yet objected to, as of the time of trial, are allowable claims").   Therefore, on the date of trial, even assuming the Trustee properly asked the court to take judicial notice of the claims register, the court was not required to accept the contents of each proof of claim listed on the schedules or claims register as established fact. Under these circumstances, the court is still not satisfied that the Trustee met his burden of proof by a preponderance of the evidence under 11 U.S.C. § 547(b)(5).

The Trustee's reliance on the schedules and claims register to establish the existence of joint debts, which the court regarded as material to the hypothetical liquidation under § 547(b)(5) in this case, illustrates the problem. Without the benefit of testimony, the court assumes that the supposed joint debt to which the Trustee refers in his post-trial briefs is one of the claims of Chase Cardmember Services listed on Schedules F and H, and presumably the account ending in 0451.  The only claim that a Chase entity filed, however, appears to be a business debt for the Debtor's sporting goods business, represented by the account ending in 0275.  See Claims Register at Claim No. 3 (claim of Chase Bank USA NA supported by VISA "BUSINESS CARD STATEMENT" of

"MICHAEL J THOMPKINS" and "M&M HNTNG & OUTDR G" [sic]).  The Debtor's Schedule F appears to describe this debt as "Miscellaneous purchases and to pay bills incurred during former marriage. 2002-2006," an unlikely description for purported business debt. Perhaps testimony could have shed light on the nature, validity, or extent of the claim, but the Trustee offered none. In any event, the schedules, even considering the claims register, do not establish that any joint claims (other than the Defendant's claim) would share in the entireties property.

Moreover, the court believes that the hypothetical distribution must take into account the property of the estate, if any, that the Trustee discovers, acquires or succeeds to post-petition.  Judge Tucker's opinion in Art Leather, Inc., supra, makes this point, and, contrary to the Plaintiff's argument, is consistent with the Sixth Circuit's opinion in Tenna Corp.  Many of the court's doubts regarding the hypothetical Chapter 7 liquidation -- the same doubts Judge Tucker expressed in his opinion -- remained unanswered after the Trustee rested his case.  See Art Leather, Inc., 398 B.R. at 578 (listing items to be considered).

Finally, at oral argument on the Motion, Trustee's counsel asked the court to rule on the other elements of the case.  In response, the court explained the tension it senses between judicial economy, which counsels in favor of deciding all issues presented, and judicial reluctance to make rulings on issues not necessary to a decision.  The failure of proof on the hypothetical liquidation element rendered all other issues immaterial, and this court hesitates before

reaching issues not necessary to its decision.[4]   For example, with respect to whether the Defendant was an insider at the instant of his daughter's divorce, the court is reluctant to resolve this unsettled question if it is not necessary to the decision, lest this *dicta* have unintended consequences in the next case.

The court's Supplemental Opinion reported other reasons for its judgment, and the court stands by its conclusion that the Trustee did not meet his burden of proof at trial.   For the foregoing reasons, the court will deny the Motion in a separate order.

---

[4] See, e.g., Art Leather, Inc., 398 B.R. at 583 ("It is unnecessary for the Court to reach any of those [other avoidance-related] issues, however, because the Trustee's case fails under § 547(b)(5)").

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: June 07, 2009**