UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

  MICHAEL J. TOMPKINS,

        Debtor.

Case No. DT 06-05983
Hon. Scott W. Dales
Chapter 7

_____/

  JAMES W. BOYD, Chapter 7 Trustee,

        Plaintiff,

v.

JAMES A. PETRIE, Trustee of the JAMES A.
PETRIE TRUST,

        Defendant.

_____/

Adversary Pro. No. 07-80373

**OPINION AFTER REMAND**

This matter is before the court on remand from the United States District Court ("District Court"), following the successful appeal by Plaintiff, Chapter 7 Trustee James W. Boyd (the "Bankruptcy Trustee"), from the court's judgment entered in favor of James A. Petrie as trustee of the James A. Petrie Trust (the "Defendant").

The primary focus of the adversary proceeding involved a loan made to Michael Tompkins (the "Debtor") and his then-wife, Cheryl Petrie ("Ms. Petrie"), from Ms. Petrie's parents (the "Petries"), in exchange for a mortgage note (the "Mortgage Note") purportedly encumbering the Debtor's and Ms. Petrie's residence (the "Lord Road Property"). Later, in contemplation of their divorce, the Debtor and Ms. Petrie (as tenants by the entireties) transferred

their interest in the Lord Road Property (the "Transfer") to a revocable *inter vivos* trust (the "Trust") held by the Petries, to satisfy the Mortgage Note in full. Shortly thereafter, the Debtor and Ms. Petrie were divorced. Slightly less than five months later, the Debtor filed a voluntary Chapter 7 bankruptcy petition. The Bankruptcy Trustee filed an avoidance action against the Defendant seeking to avoid the Transfer and recover the Lord Road Property, or its value. The Bankruptcy Trustee stipulated to dismiss the fraudulent conveyance count, leaving only the preference count for trial.

In reaching its original decision, the court concluded that, though required by Sixth Circuit precedent and 11 U.S.C. § 547(b)(5),[1] the Bankruptcy Trustee failed to establish any diminution of the bankruptcy estate on account of the Transfer due to the joint nature of the debt and the Petries' being the Debtor's only joint creditors. Because the court concluded that the Bankruptcy Trustee failed to establish this essential element, and because it was endeavoring to avoid rendering decisions in advance of the necessity for doing so, the court did not make any findings with respect to the other elements of 11 U.S.C. § 547. In view of the remand, however, the court must now make findings as to each element not resolved on appeal.

This case presents issues regarding the relationship between the Petries and the Trust; the effect of the divorce between the Debtor and Ms. Petrie on the legal status of the family-ties between the Debtor and the Petries; the timing of the Transfer and its role in the Debtor's divorce proceeding; and whether the evidence at trial showed that the Debtor owed an antecedent debt either to the Petries or to the Trust.

---

[1] The court was unwilling to accept the Debtor's schedules as sufficient non-hearsay evidence of the value of the assets for purposes of performing the hypothetical Chapter 7 liquidation test. In addition, the court hypothesized that the Lord Road Property would be available only to satisfy claims of joint creditors of the Debtor and Ms. Petrie. The District Court rejected this analysis, and its ruling is the law of the case.

The timing of the Transfer -- whether it occurred just before the divorce, at the same instant, or immediately thereafter -- is unclear.[2] For example, the parties recorded the Quit Claim Deed prior to the entry of the divorce judgment, but in contemplation of the divorce. If the court finds the Transfer occurred immediately before the divorce, then the Petries were, strictly speaking, related to the Debtor by affinity at that instant. If it occurred after the divorce, then strictly speaking, the Petries may have no longer been relatives of the Debtor. The sequence of events would arguably determine whether the Petries were "insiders" as a matter of law. Because the Transfer occurred beyond the 90-day preference period, the Bankruptcy Trustee's case turns on the Petries' insider status.

## I.    ISSUES RESOLVED BY THE APPELLATE COURT

After the District Court vacated this court's judgment and remanded the case for further proceedings, the court held a status conference. After considering the parties' views, the court decided not to reopen proofs, but permitted the parties to file post-remand briefs. Having reviewed the trial transcript, the exhibits admitted in connection with the trial, and the parties' briefs, the following constitutes the court's findings of fact and conclusions of law, after remand.

Pursuant to the District Court's ruling, the parties must accept as established the following conclusions: (1) that upon avoidance, the Debtor would hold a one-half interest as a tenant in common in the Lord Road Property, valued at $61,308.03; (2) the Debtor's interest in the Lord Road Property would be available for distribution to all creditors, not just joint creditors; and (3) the Debtor's assets on the date of the Transfer were worth $72,032.00. After reaching these conclusions, the District Court vacated the court's judgment, but deferred to this

---

[2] The court will refer to the date of the Transfer as the "Transfer Date."

court's fact-finding role.  As a result, the court concludes that all other factual and legal issues remain open for decision anew.

## II.   ELEMENTS OF A PREFERENCE CASE

To prevail on a preference avoidance claim, the Bankruptcy Trustee must establish a transfer of an interest of the Debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title [11 U.S.C. §§ 701 *et seq.*];

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 U.S.C. §§ 101 *et seq.*].

11 U.S.C. § 547(b).   The court now turns to each element of the Trustee's preference case.

A.  <u>Transfer of an Interest of the Debtor in Property (11 U.S.C. § 547(b))</u>

For the sake of completeness, and in view of the District Court's ruling, the Bankruptcy Trustee has established that the Debtor held an interest in the Lord Road Property and transferred that interest by Quit Claim Deed to the Defendant. (Def. Exh. E).

B.  <u>Transfer to or for the Benefit of a Creditor (11 U.S.C. § 547(b)(1))</u>

At trial, the parties stipulated that the Transfer was made to or for the benefit of a creditor, though the stipulation did not expressly identify whether the creditor was the Trust or the Petries individually. *See* Trial Transcript ("Tr.") at p. 6.  Because the documentary evidence at trial established that the Debtor transferred the Lord Road Property to the Trust, the court finds that the Trust was the "transferee" within the meaning of 11 U.S.C. § 550. This conclusion, however, does not determine which of the various entities was the "creditor."[3] It also does not resolve the question of whether the Petries or their Trust qualified as "insiders" under applicable law.

By being less than precise in the stipulation about who was the "creditor" for preference purposes, the Defendant could gain various legal advantages.  For example, if the court determined that the Trust was the creditor, it could not be related to the Debtor by affinity, making it impossible for the Bankruptcy Trustee to prove the creditor's status as a statutory insider.  If the creditor was not an "insider," then the Transfer would not be avoidable because it did not occur within the 90-day preference period.  On the contrary, if the Petries were the

---

[3] Indeed, by employing the phrase "to or for the benefit of a creditor" in 11 U.S.C. § 547(b)(1),  the preference statute requires the court to distinguish between a transferee and the creditor for whose benefit the transfer was made, in appropriate circumstances.

insider creditor, and the Trust was not, then the Defendant would have an argument against avoidance and recovery under 11 U.S.C. §§ 547(i) and 550(c), respectively.

The court acknowledges that under the Mortgage Note (Def. Exh. B), the Debtor and Ms. Petrie, nominally owed the debt to the Trust. Nevertheless, from the testimony elicited at trial, it plainly appeared that the Petries, their daughter, and the Debtor conducted themselves as if the Petries, individually, were the creditors. For example, Ms. Petrie approached her parents about arranging a loan, and in response the Petries advanced the money by writing a check in the amount of $123,000.00 from their individual checking account. (Def. Exh. C). Mr. Petrie testified consistently and credibly that his wife handled the loan with his daughter and son-in-law, even though she was not a trustee of the Trust -- he was. The tenor of the testimony of each witness and the circumstances surrounding the transaction from start to finish compel the court to conclude that the loan was from the Petries to their daughter and the Debtor, and that it was made to address an issue of family concern, rather than for business or estate planning reasons. Tr. at p. 29, lines 16-19; p. 31, lines 4-14; p. 37, lines 13-38 line 2; p. 63, lines 5-19; p. 71 lines, 15-16.

Regarding the Trust itself, Mr. Petrie testified that it was created essentially as an estate planning device, and that he and his wife understood they could do anything they wanted through the Trust. (Tr. at pp. 48-49). Indeed, according to the Trust documents, the Petries were the only beneficiaries during Mr. Petrie's life. (Def. Exh. M). The court infers from the trial testimony, especially from Mr. Petrie, that the Petries did not strictly separate themselves from their Trust and, except for documenting the loan and holding title to the Lord Road Property, for all practical purposes the Trust was invisible and identical with the Petries.

In addition, from a legal perspective, the Trust held legal title to the claim against the Debtor, and the Petries (as beneficiaries) held equitable title.  Therefore, together, the Trust and the Petries held full title to the Mortgage Note. Furthermore, at trial, Defendant's counsel explained that as far as the Trust and the Petries were concerned, they held a single claim and, assuming avoidance, they would assert only one claim in the Debtor's bankruptcy case. Coupling these considerations with the manner in which the parties conducted themselves prepetition, the court finds that the Trust and the Petries were both "creditors." Despite the separation of legal and equitable title to the property (the Mortgage Note and later the Lord Road Property), there was a substantial identity of interests between the Trust and the Petries.  The Trust existed only to advance the Petries' estate planning purposes. They disregarded its separateness in their daily lives.  Therefore, the Petries were also the creditors on account of whose debt the Debtor made the Transfer.

C.  <u>Transfer on Account of Antecedent Debt (11 U.S.C. § 547(b)(2))</u>

The evidence established that the Debtor transferred his interest in the Lord Road Property on account of the debt memorialized in the Mortgage Note dated August 8, 2005.  The Transfer post-dated the Mortgage Note, and therefore qualified as an "antecedent debt."

D.  <u>Transfer Made While the Debtor was Insolvent (11 U.S.C. § 547(b)(3))</u>

Because the Transfer occurred outside the usual 90-day preference period, the Bankruptcy Trustee must establish the Debtor's insolvency without the benefit of any statutory presumption. *See* 11 U.S.C. § 547(f) (debtor is presumed insolvent only during the 90 days before filing).  Determining insolvency for preference purposes requires the court to perform a balance sheet test, comparing assets and liabilities. *See* 11 U.S.C. § 101(32).  As noted above, the

District Court concluded that the Debtor had assets valued at $72,032.00 as of the Transfer Date, but it was unable to determine the Debtor's debts on that day. *See* Opinion at p. 9 ("The problem is, of course, that we do not know what were Debtor's liabilities on the date of the transfer.").

Although the District Court intimated that the Bankruptcy Trustee might not have established this element of his case, it also determined that the issue was open for consideration on remand.   Having reviewed the evidence including the filed claims, the court is satisfied that the Bankruptcy Trustee has established insolvency.

In his post-remand brief, the Bankruptcy Trustee addressed the District Court's concerns regarding certain claims involving the Debtor's business and credit card debts, as they relate to an insolvency analysis.  The court agrees with the Bankruptcy Trustee that the enumeration of each spouses' debts in the Consent Judgment of Divorce, supplemented by Exhibit 14 and the Debtor's Schedule F, provides enough information to determine insolvency on the Transfer Date because the Consent Judgment of Divorce and the Transfer Date were very close in time. The evidence also shows that the claims detailed in the Bankruptcy Trustee's post-remand brief existed on the Transfer Date.  The court finds that the Debtor's liabilities were approximately $81,795.29, and given the District Court's findings that his assets were worth $72,032.00, his debts exceeded his assets by approximately $9,762.00.  Therefore, the evidence preponderates in favor of finding insolvency on the Transfer Date.

E.   Transfer Within 1-year of Filing to an "insider" (11 U.S.C. § 547(b)(4)(B))

Regardless of whether the Transfer occurred on June 28, 2006, when the Petries recorded the Quit Claim Deed (Def. Exh. E), or on June 30, 2006, when the state court entered the Consent Judgment of Divorce (Def. Exh. K), the Transfer occurred outside the usual 90-day

preference period. Therefore, the Bankruptcy Trustee's case depends in large part upon whether the Debtor transferred the Lord Road Property to or for the benefit of a creditor that qualifies as an "insider." If so, this would extend the preference period to one year.   11 U.S.C. § 547(b)(4)(B).

Naturally, the parties focused much of their attention during trial and in post-trial briefing on the issue of whether the Trust, or the Petries, were "insiders" either as a matter of law, due to affinity, or as a matter of fact, given the nature of the relationships and the transaction under review.

Congress has defined "insider" in relevant part as follows:

> (31) The term ``insider'' includes--
>
> (A) if the debtor is an individual--
>
> (i) relative of the debtor . . .

11 U.S.C. § 101(31).  In addition, Congress has defined "relative" to mean an "individual related by affinity or consanguinity within the third degree as determined by the common law." *Id.* § 101(45).  By using the word "includes" in the statute, the definition of "insider" is illustrative and not limiting, whereas the definition of "relative" is precise and exhaustive, because it uses the word "means" rather than "includes." *See* 11 U.S.C. § 102(3).

In its previous opinion, the court held that the Transfer occurred for preference purposes on June 28, 2006, when the parties recorded the Quit Claim Deed (Def. Exh. E), even though it was in contemplation of the Consent Judgment of Divorce (Def. Exh. K) entered two days later. *See* 11 U.S.C. § 547(e)(1) (transfer occurs when perfected against a *bona fide* purchaser).  It is

conceivable, of course, that had the Consent Judgment of Divorce not been entered, the Debtor and Ms. Petrie may have rescinded the Transfer, because the Transfer was intended to facilitate the divorce and the Quit Claim Deed was delivered on that condition.  Notwithstanding the Defendant's arguments about conditional delivery of the Quit Claim Deed, however, the court adheres to its original decision that the Transfer took effect on June 28, 2006 -- the date after which a *bona fide* purchaser of the Debtor could not have obtained a superior interest to that of the Defendant, because the recorded Quit Claim Deed gave constructive notice of the Defendant's interest. *Id.*

Because the Transfer took effect on June 28, 2006 for preference purposes, the court concludes that the Petries were insiders as a matter of law because they were related to the Debtor by affinity within the third degree on that date. *People v. Russell*, 703 N.W.2d 107 (Mich. App. 2005).  The fact that the relationship between Mr. Petrie and the Debtor was strained at that point and about to change does not affect the court's conclusion.

Even assuming, *arguendo*, that the Petries were not insiders related by affinity, the court nevertheless concludes that their relationship at the time of the Transfer was not an "arms length" relationship, given the familial ties between the Petries, their daughter, and their grandchildren -- ties that survived the divorce.  As noted above, the Bankruptcy Code definition of "insider" is flexible, and takes into account a variety of relationships that call for closer scrutiny, beyond the specifically enumerated insider relationships:

> Under bankruptcy law, "insider" is a flexible term. The bankruptcy courts have noted that, rather than defining it, the Code gives non-exclusive examples. . . .  Further, the legislative history of the 1978 Code defines an insider as a person or entity with "a sufficiently close relationship with the Debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the Debtor." S.Rep. No. 95-989, 95th Cong., 2d Sess.,

reprinted in 1978 U.S.C.C.A.N., 5810; *Hunter v. Dupuis (In re Dupuis)*, 265 B.R. 878, 885 (Bankr. N.D. Ohio 2001) *and In re Chira*, 353 B.R. 693, 724 (Bankr. S.D. Fla. 2006). Such a relationship likely exists where the defendant is in a "position to exercise some degree of control or influence over the debtor." *Hunter*, 265 B.R. at *885 and Chira*, 353 B.R. at 725. . . .  Thus, the crux of determining whether a person is an insider under the Code is ferreting out whether that person has "a sufficiently close relationship with the Debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor," including determining the extent to which the defendant was in a position to control or influence the debtor.

*Slone v. Lassiter (In re Grove-Merritt)*, 406 B.R. 778, 800 (Bankr. S.D. Ohio 2009).

As noted above, the making of the loan to the Debtor and Ms. Petrie, and the subsequent forgiveness of that debt in exchange for the Transfer, were quintessentially family transactions, given the close relationships involved and the degree of control the Petries exercised over their daughter and the Debtor as their principal benefactor and creditor.  Furthermore, the parties effectuated the Transfer to facilitate the divorce, an inherently personal motivation. The consensual divorce would not have occurred when it did, but for the Petries' willingness to cooperate, given that they held the most substantial claim against the Debtor, one that all the parties to the Mortgage Note regarded as secured by the Lord Road Property.  More to the point, the court infers the obvious intent on both sides of the loan transaction to provide a home for the Debtor's children and his ex-wife -- a home adjacent to the Petries' home, and one in which their grandchildren had been living for some time.  In large measure, the Debtor's marital status hinged upon the Petries' role in resolving the debt represented by the Mortgage Note.  These family hallmarks and special influence make the Transfer between the Debtor and the Petries one which calls for more scrutiny than the average arms-length business deal.

**Page 12 of 15**

Consequently, the court is willing to, in effect, impute the Petries' insider status to the Trust, notwithstanding the fact of its existence separate from the Petries as a matter of Michigan trust law and notwithstanding *Elsaesser v. Cougar Crest Lodge, LLC (In re Weddle),* 353 B.R. 892 (Bankr. D. Idaho 2006) and *Sticka v. Anderson (In re Anderson)*, 165 B.R. 482 (Bankr. D. Ore. 1994). First, there is obviously a close identity of interests between the Trust and the Petries. Mr. Petrie was the settlor, trustee, and beneficiary of the Trust, in effect its personification. During his lifetime, the Trust exists to serve him and his wife. Tr. at p. 49; Def. Exh. M. Although the parties did *document* the loan through the Trust, the Petries supplied the loan proceeds in the first instance, and did so at the behest of their daughter, the natural object of their bounty, in order to help her out of financial distress.

Second, the Defendant's argument premised on *Weddle* and *Anderson* is not persuasive. A self-settled, revocable, *inter vivos* trust such as the Trust in the present case is not sufficiently analogous to a closely-held corporation or limited liability company, as in *Weddle*. The law does not lightly ignore the separateness between corporate entities and their shareholders or members, because of the social benefits of the principle of limited liability and the reliance interests of members, shareholders, and creditors. Settlors of self-settled revocable trusts, however, do not receive comparable protection. *See* M.C.L. § 700.7506(1)(a). The policy reasons which require courts to respect the distinct existence of corporate entities and probate estates do not warrant extending that protection to revocable *inter vivos* trusts. For purposes of this preference case, the Petries and the Trust are insiders. This conclusion makes 11 U.S.C. §§ 547(i) and 550(c) inapplicable.

F.  Hypothetical Chapter 7 Liquidation (11 U.S.C. § 547(b)(5))

At the time of the Transfer, the Debtor held the interest of a tenant by the entireties which, under Michigan law would not be an "asset" for fraudulent conveyance purposes (except with respect to joint creditors) but would nevertheless be included within the property of his bankruptcy estate, had the Transfer not occurred.  *See* M.C.L. § 566.31(b)(iii) (defining "asset" to exclude entireties property except with respect to joint claims).  Because this proceeding seeks avoidance and recovery of the Transfer as a preference rather than a fraudulent conveyance, however, the Debtor had an interest in the property for present purposes. *Cf. Nino v. Moyer (In re Nino)*, Slip Op. 08-CV-721, 2009 WL 416295 (W.D. Mich. Feb. 18, 2009) ("There is a plausible argument that creditors are harmed by preferential transfers of exemptible property, and that such transfers should not be subject to a 'no harm, no foul' rule."); *Lasich v. Wickstrom (In re Wickstrom)*, 113 B.R. 339 (Bankr. W.D. Mich. 1990); 11 U.S.C. § 541(a)(1).

The court also finds that the debt was not secured, despite the likely intent or understanding of the parties to the Mortgage Note, because the Mortgage Note was never recorded.

Prior to the District Court's remand, the court was unwilling to accept the Debtor's schedules as sufficient evidence of the value of the assets for purposes of performing the hypothetical Chapter 7 liquidation test. More generally the court believed that given the Debtor's prepetition business activities, the Bankruptcy Trustee's case ought to have included evidence, beyond the hearsay statements and opinions of the non-party Debtor, regarding the value of

assets included within the property of the estate.[4] Because the Bankruptcy Trustee's case relied on the schedules alone, the court was unwilling to exclude the possibility that the estate might be augmented through avoidance actions or otherwise under 11 U.S.C. § 541. On the claim side, similarly, the court would have preferred to hear from the Bankruptcy Trustee regarding the outcome of his evaluation of claims, although the court acknowledges that properly filed proofs of claim constitute *prima facie* evidence of the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f).

On remand, the District Court encouraged this court to be more specific in its evaluation of the proofs of claim. Although the court notes that Claim No. 1 is filed in the wrong case, which tends to undercut the unconditional acceptance of the claims register advocated by the Bankruptcy Trustee at trial, that claim is *de minimus*. The other claims are not similarly tainted and enjoy an unrebutted presumption of validity under Rule 3001(f). The sum of the assets on Schedule A & B is $206,609.50, but after accounting for the scheduled liens and the Debtor's exemptions, there are no assets available for distribution. The sum of the claims on the claims register (excluding Claim No. 1) plus the claim the Petries would have had if the Transfer had not occurred is $98,976.72. Given the District Court's ruling and the Debtor's reliance on federal exemptions, whether or not there are joint claims is immaterial in evaluating how the Petries would have fared in a hypothetical liquidation under Chapter 7. By virtue of the Transfer, the Petries received full payment under the Mortgage Note; given the scheduled assets and claims, they would have fared far worse in Chapter 7 had the Transfer not occurred.

---

[4] The parties stipulated to the admission of the Debtor's schedules (Pl. Exh. 7), which permitted the court to consider the Debtor's conclusion about the value of his assets and amount of his debts. In its initial analysis, the court discounted this evidence.

Under these circumstances, the court concludes that (1) the Transfer resulted in the diminution of the estate, and (2) the Petries improved their position as a result of the Transfer.

### III.   CONCLUSION

The Trustee has established each element of his case under 11 U.S.C. § 547(b), and the Transfer of the Lord Road Property must be avoided.   Moreover, because the court has determined to treat the Trust and the Petries as insiders, the provisions of 11 U.S.C. §§ 547(i) and 550(c) do not limit avoidance or recovery.   Finally, because the Debtor's ex-wife and children are residing in the Lord Road Property, and because the Trustee is naturally and commendably reluctant to displace them, he has requested, and the court will enter, a judgment in the amount of $61,308.03 against the Defendant representing the value of the Debtor's interest in the Lord Road Property on the Transfer Date.

Nothing in this Opinion precludes the Petries or the Trust, as appropriate, from filing a claim in accordance with 11 U.S.C. § 502(h) and Rule 3002(c).

The court will prepare a separate judgment to this effect.

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: June 28, 2010**